Mr. Gutierrez, I believe you were appointed. We appreciate your efforts on behalf of your client. Thank you. All right. Our second case for this morning is Kimbrough v. Neal. We will hear from Mr. Hudson. May it please the Court. Mr. Kimbrough's ineffective assistance claim fails because the last state court to consider the claim rejected it on state law grounds. And the Supreme Court has long held that state court answers to state law questions cannot be second-guessed by federal habeas courts. Indeed, in Miller v. Zetecki, a case in all material respects identical to this one, this Court applied this rule to reject precisely the same ineffective assistance claim that Kimbrough raises here. So I think what Mr. Kimbrough is arguing, although I'm happy to be corrected if I'm wrong, is that if we roll the clock all the way back to the direct appeal, at that point, had the Rule 7b argument been properly presented to the Indiana appellate court, we know from the two-to-one vote that actually occurred when it really wasn't. It was kind of off on the sidelines, and the dissenting judge is talking about it, and it's unclear. I'm hesitant to place too much weight on the fact that somebody used the word appropriate because it seems like that's a pretty general word. But the idea is, you know, maybe somebody would have thought that at the time, and Mr. Kimbrough was deprived of the opportunity to make that argument through the ineffectiveness of his appellate counsel. Now, I understand the state at this point is all the way at the other end of the telescope, and you're saying, well, fine, all of that happened. There was the first appeal. There was the grant of transfer. There was a lot of water under the bridge. And now we know what the Indiana Court of Appeal thinks about this 7b argument, thinks it has no merit. What's the point of sending it back? But is that the right perspective, or should we take the ex ante perspective? Two things, Your Honor. First, I think you're absolutely right in characterizing Mr. Kimbrough's argument here. His argument is that the decision of the direct appeal court, it makes all the difference in distinguishing this from the other. Well, it gives you a window, right, into what could have happened if the argument. And then when you look at the Indiana Supreme Court's decision the first time around, it came across to me very much as a procedural default decision. This argument hadn't been properly presented. We don't reach this argument when nobody is making it, so go away. That's right. I think the fairest thing to say is that the Indiana Supreme Court doesn't reach the merits of the Rule 7b question. That's right.  2254d says that a federal habeas court cannot grant habeas relief on a claim that has been previously adjudicated by a state court unless it concludes that that previous adjudication was contrary to federal law. And the previous adjudication here is the Indiana Court of Appeals' decision on post-conviction review. And when the Indiana Post-Conviction Review Court, just as in Miller, says your sentence was not inappropriate under Rule 7b, that's a state court answer to a state law question that binds federal habeas courts. So according to the terms of the case, that would be Kimbrough 3, is that correct? That's exactly right. And that's what you're indicating is the last reasoned opinion, is that correct? That's correct, yes. That's right. So the direct appeal decision simply... But let me ask you this. You're right. Mr. Kimbrough, after round one, so to speak, after the Indiana Supreme Court speaks, brings his state post-conviction proceeding. But unless Indiana is different from every other jurisdiction I know about, and to my knowledge it is not, people have a real burden on post-conviction to show much more fundamental error than they would on direct appeal. You don't just undo things. All of the states and the federal government have interests in finality. And so is the Indiana, first the trial court and then the Kimbrough 3 court, addressing in a sense the same question as they would have addressed had this properly come up on direct appeal? Two things, Your Honor. First of all, precisely they are not addressing exactly the same claim because the claim in post-conviction review is ineffective assistance of appellate counsel. So it's not a pure Rule 7b claim. That's true. However, it's important to see that the state has not contested the deficient performance. So the principal question before the post-conviction review court is whether Mr. Kimbrough can show prejudice. And in order to determine the answer to that question, the post-conviction review courts need to decide, is your sentence inappropriate for the purposes of Rule 7b as a matter of Indiana law? And it's worth noting that in terms of the remedy that the Indiana Court of Appeals could issue in a post-conviction review proceeding, it almost certainly would not have been a new direct appeal to raise the Rule 7b argument for a third time. It would have just been to grant the Rule 7b relief. Can you say a word about remedy? There's something weird about the briefing in this case, which is that Mr. Kimbrough seems to be saying that the Indiana, I'm now just focusing very directly on what the U.S. District Judge, what Judge Lawrence did. And I understand Mr. Kimbrough to be saying Judge Lawrence somehow was ordering an impossible remedy when he said have a new direct appeal. And I understood the state to be responding, oh, no, we do that from time to time when appropriate. So is it your position that this is within the toolbox of Indiana courts? Absolutely, Your Honor. And there's no question about that. Indiana appellate courts, I won't say frequently, but on occasion. Well, when needed. When needed by federal habeas courts, yes, absolutely. I think it's worth noting that the Indiana Supreme Court in Henley v. State, a 2008 decision, said not in a Rule 7b context, but in a sufficiency of the evidence context, that in an ineffective assistance of appellate counsel claim on post-conviction review, if the Indiana appellate court concludes that the claim would have succeeded, the appropriate course is not to issue a new direct appeal. There's no need to do that. The appellate court should just go ahead and issue the relief that the original direct appeal court would have issued had the argument been raised. And so it's important to see that here because we can see that the Indiana Court of Appeals on post-conviction review, if it had concluded that Mr. Kimbrough's sentence really is inappropriate in light of the nature of the offense and the character of the offender, then it could have gone ahead and granted Mr. Kimbrough Rule 7b relief. So apparently like taking it back down to 40 years or something like that? Or whatever it thought was appropriate. It wouldn't have been limited to precisely the decision that was issued in the direct appeal. That's exactly right. And that's important because we should remember what exactly the constitutional right that Mr. Kimbrough asserting is. And the constitutional right is that if the state provides you, as Indiana and all other states do, an appeal as of right, then that appeal is deprived of its legitimacy if the appellate court doesn't have the opportunity to consider the strongest arguments that you have. And here, perhaps the direct appeal court didn't have that opportunity. But there is absolutely no question that the post-conviction review court, which had the power to issue the Rule 7b relief directly, did. And it concluded as a matter of state law that the sentence is not inappropriate. That ends the inquiry for the purposes of federal habeas review. And just I'd like to note in closing that under Mr. Kimbrough's theory, every failure to raise a Rule 7b argument in the direct appeal would give rise to a valid Strickland claim in the federal habeas proceeding, even if the 7b argument would fail as a matter of state law. And that means under his theory Is that right? I can certainly see in particular facts of this case with this effective, let's be real, lifetime sentence for Mr. Kimbrough, not very many people make it past the age of 80. One note on that, Your Honor. At the time, the sentencing rules in effect at the time of Mr. Kimbrough's sentence, as a practical matter, an offender would only serve about half of the headline sentence. So an 80-year sentence that he received is a 40-year sentence. So maybe he sits in prison for 40 years. In any event, it's an awful long time. And I'm just thinking as a competent lawyer assesses whether a 7b effort should be made, surely the excessiveness of the sentence and the ability to persuade, in other words, the facts make a difference. And so I'm not sure that this is like opening the door to every extra month. Oh, of course. So I wouldn't say that under Mr. Kimbrough's theory every Rule 7b claim succeeds. The point is that under his theory, because his theory says Rule 7b is so discretionary that when the Indiana Post-Conviction Review Court rejects a Strickland claim based on a failure to raise a Rule 7b argument, there is no way for that federal habeas court to know that there wasn't prejudice because it's purely discretionary. And that creates a serious problem. No, I thought your argument was that it's like most discretionary things, that there are boundaries and so it's possible to abuse discretion. That's exactly right, Your Honor. And I think it's worth noting that under Mr. Kimbrough's theory, if your counsel appropriately, what they're supposed to do, if you've got a reasonable argument on direct appeal, they raise the Rule 7b argument. And if it's rejected, that's game over. You can't go back and try it again. If they don't raise the Rule 7b argument, then you can raise the Rule 7b argument as a Strickland claim, an effective assistance of appellate counsel claim on post-conviction review in state court. And if the Indiana Court of Appeals rejects that argument, that doesn't stop you from raising it in federal habeas. So you've got two shots instead of one. And as this court noted in Miller, 2254 does not make defendants with poor lawyers better off than defendants with good ones. And that's exactly what Mr. Kimbrough's theory does. And so for those reasons, the district court's decision should be reversed. And if there are no further questions, I yield the rest of my time. Thank you, Your Honors. Thank you. Mr. Vaughn? Chief Judge Wood, Your Honors, may it please the Court, I'm Cody Vaughn arguing for John Kimbrough under the supervision of Michael Osbrook. Miller's central holding is that this court should not review state court decisions of overstate law when it would have been futile to contest the sentence on appeal. Let me ask you, this is what really bothers me about your position. We all know how we got here, you know, all the stages. But it's hard for me to imagine relief that would do anything. Because if you ordered a new direct appeal and sent this thing back to the Indiana Court of Appeals, why isn't the Indiana Court of Appeals going to say, we already spent, like, 20 pages telling you what we think of the Rule 7b argument. We don't find this inappropriate. And so if you want us to say it again, we will. But, you know, we don't ask the states to do pointless things. I think as a matter of procedure, what Mr. Hudson just said is the case. The state cited a number of things. There is power within the Indiana courts to have that more tailored relief, jump in and get a new direct appeal. But this case just has developed further, and we know what the Indiana courts are. I don't know about cross, you know, law of the case in Indiana, when one panel of an Indiana appellate court decides something. But I'd be very surprised if other panels didn't respect that first decision. So aren't you a little too late to be making this argument? First off, I would like to note that it's not actually clear that state courts actually have the power to order new appeals. But Mr. Hudson says they do it, and why isn't that a question of state law that it's really up to Indiana? It's not up to us to monitor whether they're complying with the Indiana Constitution and civil procedure codes. Well, it's a consequence of the ADPA in which if you actually find that the merits, that we went on the merits, then what that actually means is that there was an unreasonable application of federal law. And what would have happened is we would have had relief in the Indiana post-conviction court if they would have reasonably applied strictly. And under Montgomery, as evidenced by practice in Bomani Ben-Israel's case in the Indiana Supreme Court, they ordered new resentencing hearings and an effective appellate census councils. Under the post-conviction rules, they do not have the power to order new appeals. Sometimes they do do it, but that's because they understand this court's orders. They don't have the power to what? I'm sorry, I didn't hear you. Oh, I'm sorry. Excuse me. They don't order new appeals in effective assistance council cases. But Mr. Hudson says quite to the contrary. And all I'm trying to say is if that's what an Indiana court does and a new appeal takes place, there is no federal problem with that. Maybe somebody at the state level will say you haven't applied state law right, but that's really not our business. And I'll take it even a step further. If a federal district court judge in a 2254 case orders alternative relief, as this judge did, you can either have a new direct appeal or you can release the man. I mean, there's always an opportunity to just say we're done, we're finished, he's going to be released, the writ's granted unconditionally. Well, there's no question the Indiana courts can do that. And if a federal judge blunders and offers the state an option that it can't use under state law, then presumably the state won't use it. But I don't see any federal interest in that. The federal interest is in adjudicating the 2254. And here, if the theory of ineffective assistance of appellate counsel on direct appeal is the failure to raise in a timely fashion the Rule 7b claim, we now know what the Indiana Court of Appeals thinks of that claim. To the first point about the relief, there's four reasons why this court should care. One is the... I care about all procedural law. Actually, it's one of my favorites. But it's a federal matter, not our job to police internal allocations of power in any state. But ex ante, this court needs to order equitable relief. That is what Faye V. Noya says. And so the question is, what is the equitable solution to this case? And that's what would have happened under the ADPA, under what would have happened if Kimbrough would have won in state post-conviction court. Further... But how do we even get that far since we know what happened at the prejudice part of the inquiry in Kimbrough 3? Because what Kimbrough 3 did was actually decide the case on the merits rather than ask what is the reasonable probability. If they would have asked what a reasonable probability is, then they would have came to the conclusion because of Kimbrough 1 that there was at least a reasonable probability that Kimbrough would have received relief. But here's where we get into your theory of discretion, which I was a little uncomfortable with because it sounded like lawlessness to me. Indiana Appellate Rule 7b, like many things, is... It creates a standard. It's not, you know, beyond X number of years you can't do it or whatever. You can't impose a sentence on somebody who's a minor. We have strict rules. But this is a standard, inappropriateness. But there are boundaries, and it's reviewable for abuse of discretion. And it looks to me as though the Indiana Supreme Court and the Indiana Court of Appeals is quite comfortable taking a look at a decision. In fact, the Indiana Supreme Court, maybe on procedural grounds, reverses the Indiana Court of Appeals the first time through. There are three issues. One, this is not an abuse of discretion. Essentially what happens when the Supreme Court reviews the sentences or when the Court of Appeals reviews the sentences, it's appellate resentencing. They're making their own judgment. When you look at what the Supreme Court says, they say that there is, in their collective judgment, that's what the new sentence should be. Now, you're right that there are bounds to this discretion. But just because there are bounds, that doesn't mean that, excuse me, let me back up. Yes, there are bounds. And that's how we're going to exclude cases that would be totally futile. And so, yes, there are cases. Miller is right. There are cases where there is actually no possibility of 7B relief. However, within that larger ambit, the very wide discretion, which the Indiana Supreme Court says that it's unlike reviewing for legal error, or sufficiency of the evidence, and there's actually no right answer in these cases, that is broader than abuse of discretion. It's, like I said, it's appellate resentencing. They're gearing to take a second look at the sentence and substitute their own judgment if it's an outlier. And in Neal v. State, the court even rejected the negative framing of the rule because they said if you tell the Indiana Court of Appeals in that case said, we can't review a sentence unless it's inappropriate. The Indiana Supreme Court said that is too narrow of a view of 7B relief. And so, yes, there are bounds. And the fact that there are bounds doesn't keep it from being incredibly discretionary. Mr. Young, a question with regard to the prejudice component that Judge Lawrence talked about in his decision. On page, looks like 10 of the short appendix, he has a line, this determination cannot be considered in a vacuum. He's referring there to the reduction in the sentence. Was it appropriate for Judge Lawrence as part of his analysis to be comparing Kimbrough I and Kimbrough III? Yes, and that's because of the nature of Strickland. So what the Kimbrough III court was doing, or what it needed to do was look at the Strickland analysis. It didn't look at prejudice. That prejudice analysis says we have to look back at the proceeding in Kimbrough I. And so Kimbrough I is where the constitutional violation occurred, and that's where the ineffective appellate assistance of counsel occurred. And so Kimbrough I is absolutely vital to the analysis. Let's lay the AEDPA on top of that, the double protection. What is the last reasoned decision of a court then? That is Kimbrough III, but the reasoning of Kimbrough III isn't explicitly a Strickland analysis. They constantly refer to the briefing. They don't go through and look at 7B cases and weigh it. What they do is they say, look, we have the full benefit of briefing, and so therefore we can say that there would not have been a reasonable probability. And that's an argument that this court can evaluate because that's just a Strickland prejudice analysis. And so when we look at the briefing argument, we have to remember that there was Judge Mathias' dissent that raised all the different 7B arguments that that panel decided that decision over, the Kimbrough I panel decided that decision over that dissent. And the state has never raised, and neither has Kimbrough III, ever raised an argument that was not in that dissent about why this should not have 7B. So that increases our understanding that Kimbrough I is very representative of what would have happened, and it's a reasonable probability standard. Here's a problem I have. Of course, the looming question for you that you haven't directly addressed yet, but maybe you will, is whether we could rule for you without overruling Miller against Zetecki. So, I mean, this can happen, but it's a step of great significance. And I guess what I keep coming back to is the judge seems to think, well, because one panel of the Indiana Court of Appeals came out one way and the second panel of the Indiana Court of Appeals came out the other way, that tells you it was fairly debatable in Indiana, and so that's enough to show prejudice. But bumping up against that observation, for me at least, is the concept of finality, number one. You could say that in any sentencing proceeding. If you had a sentencing proceeding in an ordinary robbery case in Indiana and then you gave it to a second judge and a third judge and a fourth judge, you might come out with different answers, but we have to take an answer as the final one, and this last reason decision rule the Supreme Court has given us seems to tell us it's Kimbrough III that we need to look at, not I. First off, this court can decide this without overruling Miller because Miller specifically says that when it would have been futile. So what we have here is we don't have – so in Miller, the post-conviction court said that the defendant in that case, the petitioner in that case, cannot receive 7B relief. That's the word that they use, cannot. That is different. That's saying that it's futile under law. Or if you look at Harper, they essentially say, look, this person, Harper, is ineligible. He didn't raise any arguments on why 7B relief would be appropriate in this. Those are the type of cases that Miller foreclosed. What Miller doesn't foreclose is a case like this in which we actually have a panel saying, this is a pretty good 7B case. Let's grant it sui responde, not from. Are we sure that's what they did? They never cite 7B in the majority opinion. No, but every single court has recognized this as a 7B, including the dissent there. And they say focusing on the appropriateness of the sentence and it is the only authority that they could have used to reduce the sentence. And this has been adjudicated as a 7B. And the Indiana Supreme Court cognized it as a 7B and said, you don't get it because it's procedural waiver and you have to raise 7B. If it wasn't 7B, then that procedural waiver type argument wouldn't make sense. Going to the finality issue, the finality issue is less important here because what we're doing is we're sitting in habeas. And then we look at the Strickland analysis of the Kimbrough III Court. Everything has gone along according to the procedure. Now, if the Kimbrough III Court would have said, look, the 7B claim is just under Indiana law, it's a loser. No reasonable panel could find a 7B relief here. That would have been futile and that would have been the end of it and Miller would control. And that would be final. But what happened here is we went through the direct appeal all the way through to the post-conviction and we did all of the procedural things that were required. The finality can kick in once Kimbrough's constitutional right to effective sense of counsel is upheld. What's the meaningful difference between what the Kimbrough III Court said and what you just said would have been enough to put this to rest? Because every time that they offered a reason here, they said, well, now we have briefing. Now we have briefing. Four times they mentioned briefing. They're just writing an opinion. I mean, they're saying we've thought about it more and we don't find any merit in this. Well, they don't say that they don't find merit in this. They just decided in their case. The bottom line must indicate that they didn't find merit in it because they don't grant relief. And this takes us back to this discretionary nature of it. Just deciding it on the merits does not actually dispose of the case because the inquiry here is a Strickland inquiry about prejudice. And so the question is whether there's a reasonable probability that the panel would have and Kimbrough I would have granted relief. And we have all the evidence here that they would have, even with briefing. And, again, there are two points to make. One is this went from a 40-year above advisory sentence, which the advisory guideline for the range is 30. This went from 40 to 20 years on each count. And so they found this to be even a below advisory type sentence. And, second, any relief that would have been granted would have been enough. So if they would have, even with briefing, went down to 30 years instead of 40, that would still be evidence that there would have been prejudice. Thank you. All right. Thank you very much. Anything further, Mr. Hudson? Just a couple of points, Your Honor. First, on whether Miller is distinguishable, there is simply no question that the Indiana Court of Appeals decision in Kimbrough III uses exactly the sort of language that the Indiana Court of Appeals and post-conviction review used in Miller and in Harper v. Brown, another Rule 7b case applying Miller. So there's no question that the Indiana Court of Appeals, in rejecting Mr. Kimbrough's claim, concluded that his sentence was not inappropriate under Rule 7b. That's what all of the briefing was about. And that's why, of course, it says, therefore Mr. Kimbrough cannot show prejudice. And, secondly, on the discretionary issue, as you pointed out, Chief Judge Wood, there's no question that the Indiana Supreme Court has said that there are boundaries in Rule 7b analysis. And so although there may be situations where reasonable judges could disagree, there's nothing unusual about that, there are occasionally wrong answers. And in Kimbrough III, the Indiana Court of Appeals said this would have been a wrong answer. And Strickland itself says that the Sixth Amendment does not entitle defendants to the luck of a lawless decision maker. And that's precisely why it's Kimbrough, even beyond what 2254d requires in terms of the exclusivity of state court decisions on state law questions. That's why that decision is binding here, because the Indiana Court of Appeals in Kimbrough III says it would have been a wrong answer to grant Rule 7b in this case. And if that's so, then it doesn't matter what the direct appeal court said. And for that reason, Miller is indistinguishable, and the district court's decision should be reversed. Thank you, Your Honor. All right. Thank you. Thank you very much. Thanks as well to the law school. We appreciate your participation in the argument, and the case will be taken under advisement.